**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
In re:                        :
                              :   Bankruptcy No. 00-62780 (RTL)
POLYCEL LIQUIDATION, INC.,    :
                              :
     Debtor.                  :
                              :
_____ :
                              :
POLYCEL STRUCTURAL FOAM, INC.,:
                              :   CIVIL ACTION NO. 06-2183 (MLC)
     Appellant,               :
                              :
     v.                       :   **MEMORANDUM OPINION**
                              :
POOL BUILDERS SUPPLY OF THE   :
CAROLINAS, INC.,              :
                              :
     Appellee.                :
_____ :
```

**COOPER, District Judge**

        Polycel Structural Foam, Inc. appeals from an order of the
United States Bankruptcy Court for the District of New Jersey
entered on April 18, 2006 voiding in part the December 3, 2001
order to the extent that it deprived Pool Builders Supply of the
Carolinas, Inc. ("Pool Builders") of its property without due
process of law, and restoring title and possession of such
property to Pool Builders (the "April Order").  (Bankr. Case No.
00-62780, dkt. entry no. 850, April Ord.)  The Court, for the
reasons stated herein, will affirm the April Order.

**BACKGROUND**

## I.   The Relevant Parties

Polycel Liquidation, Inc., formerly known as Polycel Structural Foam, Inc., (the "Debtor") manufactured large structural foam products.  (Polycel Br., at 7.)  On November 7, 2000, a group of creditors commenced an involuntary bankruptcy proceeding on behalf of the Debtor under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § ("Section") 101, et seq., (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Kentucky.  (Id.)  On December 14, 2000, the Debtor's bankruptcy case was converted to a voluntary case under chapter 11 of the Bankruptcy Code and transferred to the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  (Id.)  The Debtor continued to operate its business as a debtor-in-possession.  (Id.)

Pool Builders sells swimming pool supplies and related items, including prefabricated swimming pool panels that form the interior surface of in-ground pools.  (Id.)  Pool Builders contracts with third parties to manufacture such interior pool panels using certain molds and a jig (collectively, the "Molds").  (Id. at 8.)  Pool Builders contracted with the Debtor in 1991 to manufacture its interior pool panels, and thus, it transferred possession of the Molds to the Debtor.  (Id.)  Although Pool Builders did not receive any formal notice of the Debtor's

bankruptcy case, it learned that the Debtor was involved in a bankruptcy proceeding through one of its suppliers.  (Id.)

## II.  The Sale of the Debtor's Assets

The Debtor began negotiating in August of 2001 with KJNCO, Inc. ("KJNCO"), through its sole shareholder, Kurt Joerger, about the possible sale of its two New Jersey manufacturing facilities and their related assets.  (Id. at 10 & 13.)  On September 2, 2001, Joerger signed a letter of intent stating that KJNCO intended to purchase substantially all of the Debtor's assets for $4,250,000 subject to certain conditions.  (Id. at 10.) Thereafter, the Debtor moved in the Bankruptcy Court for: "(1) authorization to sell a substantial portion of its assets pursuant to 11 U.S.C. §§ 363(b) and 365; (2) approval of the form, manner and content of the proposed notice of sale; and (3) approval of an 'expense reimbursement' and bidding procedures" (the "Sale Motion").  (Id. at 11; Polycel App., Item 7, Sale Mot., at 1 (internal capitalization omitted).)  The Bankruptcy Court entered an order granting the Sale Motion and authorizing the form and manner of the sale notice (the "Sale Notice & Procedures Order").  (Polycel Br., at 11; Polycel App., Item 8, Sale Not. & Proc. Ord.)  The Bankruptcy Court required that notice of the sale be served upon, among others, "all parties who have filed a notice of appearance and request for service of papers in this case."  (Polycel Br., at 12; Polycel App., Item 8, Sale Not. & Proc. Ord., at ¶ 4.)

3

KJNCO and the Debtor subsequently entered into an asset purchase agreement (the "APA").  (Polycel Br., at 13.)  Pursuant to the APA, KJNCO agreed to purchase the Debtor's business property as follows:

> 1.1  <u>Acquired Assets</u>.  Upon the terms, and subject to the conditions of this Agreement, on the Closing Date (as defined below) the Sellers shall sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase from Sellers, <u>all of the right, title and interest of Sellers in and to certain tangible and intangible assets</u> and rights used in connection with the ownership and operation of the Business (such assets, properties and rights being referred to herein as the 'Acquired Assets').  All of the Acquired Assets, including those related to the Bankruptcy Case shall be sold, assigned, transferred, conveyed and delivered to Purchaser free and clear of all claims, encumbrances, security interests, mortgages, pledges, restrictions, charges and liens of any kind (collectively, the 'Liens'), and shall include, without limitation, the following assets, properties and rights:
> . . .
> (d)  <u>Additional Property</u>.  Additional property (the 'Additional Property') consisting of the following: . . . (iii) all molds, nozzles and related tools, including those set forth on <u>Schedule 1.1(d)(iii)</u>[; and]
> . . .
> (k)  <u>Molds</u>.  All molds, current and historical, located in any of the Kentucky Premises, Ohio Premises and New Jersey Premises subject to the rights of third party persons who can prove an unencumbered ownership interest in same, including, without limitation, Backyard Products.  Such third party persons and the molds to which they might claim an ownership interest in are listed on <u>Schedule 1.1(k)</u>.

(<u>Id.</u> at 13-14; Polycel App., Item 10, APA, at ¶¶ 1.1, 1.1(d), & 1.1(k) (emphasis added).)  Schedule 1.1(d)(iii) specifically references a list of molds, nozzles and related tools.  (Polycel

App., Item 10, APA, at Sch. 1.1(d)(iii).)  Schedule 1.1(k),
entitled "List of Molds encumbered by third parties and a list of
such third parties", states "None."  (Id. at Sch. 1.1(k).)
Further, paragraph 4.7 of the APA states, "Sellers have good and
marketable title to all of the Business' personal property. . . .
Upon the consummation of the transaction contemplated by this
Agreement, Purchaser shall acquire title to all of the Acquired
Assets free and clear of all such liens, claims and encumbrances
whatsoever."  (Id. at ¶ 4.7.)

     The Bankruptcy Court, on November 14, 2001, issued an order,
inter alia, (1) fixing the sale hearing date, (2) approving the
sale notice, (3) setting forth the appropriate bidding
procedures, and (4) stating that if KJNCO was not the successful
purchaser at the sale, it would be "reimbursed by Sellers for its
reasonable fees, costs and expenses relating to the proposed
sale, subject to a maximum reimbursement obligation of $75,000 .
. ." (the "Second Sale Notice & Procedures Order").  (Polycel
App., Item 12, 2d Sale Not. & Proc. Ord., at ¶¶ 3, 5, & 6.)  The
sale hearing was held on November 27, 2001, and the Debtor
received multiple competitive bids.  (Polycel Br., at 16.)
Nevertheless, KJNCO submitted an offer of $5,500,000, which was
determined to be the highest and best.  (Id.)  Accordingly, the
Bankruptcy Court issued an order on December 3, 2001, pursuant to
Sections 363 and 365 of the Bankruptcy Code, authorizing the sale

of a substantial portion of the Debtor's assets to KJNCO and the assumption and assignment of certain executory contracts and unexpired leases (the "Sale Order").  (Id.; Polycel App., Item 1, Sale Ord.)

The Bankruptcy Court, in the Sale Order, found, inter alia, that:

> M.   KJNCO is a purchaser and an assignee of the Acquired Assets, as fully described in the [APA], pursuant to §§ 363 and 365 of the Bankruptcy Code, in good faith, and KJNCO is entitled to the protections set forth in § 363(m) of the Bankruptcy Code.  In the event KJNCO consummates the transactions contemplated by the [APA], then, absent a stay, the reversal or modification on appeal of this Order or any other order authorizing the sale and assignment contemplated by this Order shall not affect the validity of the sale and assignment, to KJNCO of the interests and property be so sold and transferred.
>
> N.   Proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Notice Order and Notice of Sale have been provided, and no other or further notice thereof or of the entry of this Order is necessary or required.

(Polycel App., Item 1, Sale Ord., at ¶¶ M & N.)  Further, the Bankruptcy Court ordered that:

> 3.   The sale and assignments herein shall be free and clear of all liens, claims, interests, encumbrances and other charges (collectively, the 'Liens'), pursuant to §§ 363(b) and (f) of the Bankruptcy Code. . . .
>
> 9. KJNCO is a good faith purchaser and is entitled to the protections set forth in § 363(m) of the Bankruptcy Code.
>
> 11.  The sale and assignment pursuant to the Approved [APA] is not a fraudulent transfer within the meaning of the Bankruptcy Code and any other applicable state or federal law and cannot be avoided or set aside under any applicable law.

6

(Id. at ¶¶ 3, 9, & 11.)   Following the sale, KJNCO changed its
name to "Polycel Structural Foam, Inc." (hereinafter referred to
as "Polycel") and the Debtor assumed the name "Polycel
Liquidation, Inc."   (Pool Builders Br., at 5 n.1; see Polycel
Br., at 1.)

### III. Events After the Sale

Pool Builders ordered interior pool panels from Polycel in
2002 and 2003.   (Polycel Br., at 18.)   In 2004, however, the
parties disagreed about the appropriate price of the pool panels,
and this disagreement eventually led to the breakdown of the
parties' business relationship and contention over which party
owned the Molds.   (Id.)   Thus, on February 27, 2004, Polycel
commenced an action in this Court, inter alia, for a judgment
declaring that (1) Polycel purchased from the Debtor and now owns
certain equipment and molds, including the Molds used to
manufacture pool panels for Pool Builders, free and clear of any
liens, claims, interests, or encumbrances, and (2) "Pool Builders
is obligated to pay Polycel all attorneys' fees and costs
associated with the necessity to bring this action to enforce its
contractual rights."   (Civil Action No. 04-0905 (MLC), dkt. entry
no. 1, Compl.)

Pool Builders filed an answer and counterclaim, on March 17,
2004, alleging conversion, unfair competition, unfair or
deceptive trade practices, tortious interference with contract,

and tortious interference with prospective economic advantage. (Id., dkt. entry no. 4, Ans. & Counterclaim.)  Further, Pool Builders moved pursuant to Federal Rule of Civil Procedure ("Rule") 65 for a temporary restraining order and preliminary injunction directing Polycel to make the Molds immediately available to it, and barring Polycel from taking any action that would damage the Molds prior to their return.  (Id., dkt. entry no. 5, Mot. for Temp. Rest. Ord. & Prelim. Injunc.)  We denied the motion on March 23, 2004, finding that Pool Builders had failed to sufficiently establish either a likelihood of success on the merits of its claim or irreparable harm.  (Id., dkt. entry nos. 7 & 12-13, Ord. Denying Mot. for Temp. Rest. Ord. & Prelim. Injunc. & Tr. of Hearing.)  Also, we administratively stayed Polycel's action against Pool Builders and urged the parties to bring the issue of who owns the Molds to the Bankruptcy Court.[1] (Id., dkt. entry no. 8, Stay Ord.; Polycel Br., at 19.)

Pool Builders moved in the Bankruptcy Court on April 28, 2004, "to clarify or modify or in the alternative to vacate, to the limited extent that Pool Builders['s] ownership rights are affected," the Bankruptcy Court's Sale Order on the grounds that

---

[1]  Pool Builders moved to lift the administrative stay, on January 19, 2005, arguing that the action should be reopened so that it could prosecute its damage claims against Polycel.  (Id., dkt. entry no. 17, Pool Builders' Mot. to Lift Stay.)  We denied that motion on May 5, 2005 because the issue of who owns the Molds was still before the Bankruptcy Court.  (Id., dkt. entry no. 22, Ord. Denying Pool Builders's Mot. to Lift Stay.)

(1) the Molds were not part of the Debtor's bankruptcy estate, and thus, the Bankruptcy Court did not have jurisdiction to transfer title to the Molds in the bankruptcy sale, and (2) the sale violated Pool Builders's fundamental due process rights (the "Clarification Motion").  (Bankr. Case No. 00-62780, dkt. entry no. 729, Clarification Mot.)  The Bankruptcy Court, after hearing oral argument, granted the Clarification Motion and ordered, <u>inter</u> <u>alia</u>, that the Sale Order did not authorize the sale of the Molds because they were not property of the Debtor's estate and Pool Builders was entitled to immediate possession of the Molds upon posting of a bond (the "Clarification Order"). (<u>Id.</u>, dkt. entry no. 759, Clarification Ord.)  Polycel appealed from the Clarification Order.  (Polycel Br., at 20.)

This Court, in addressing the appeal, noted that "the Bankruptcy Court failed to state the legal basis for its decision or conduct a substantive analysis of Rule 60(b)(4), (5), or (6) as these provisions apply to the facts of this case."  (Civil Case No. 04-4029 (MLC), dkt. entry no. 7, 4-29-05 Mem. Op., at 22.)  Moreover, we stated that "the Clarification Order effectuated a change in the status quo as to the location and possession of the [M]olds, transferring possession of the [M]olds from Polycel to Pool Builders, and requiring Pool Builders to post a bond with the clerk of the court in case Polycel subsequently was found to own the [M]olds."  Thus, it appeared

that the Bankruptcy Court granted Pool Builders interim injunctive relief, but did not make any findings of fact or conclusions of law to support such injunctive relief. (Id. at 22-23.)  Accordingly, we reversed the Clarification Order and remanded this matter to the Bankruptcy Court.  (Id.)

## IV.  **The April Order**

The Bankruptcy Court, on remand, conducted an evidentiary hearing and determined that the Sale Order is "void to the extent that it deprived Pool Builders of its property interest without due process".  (Bankr. Case No. 00-62780, dkt. entry no. 850, April Ord.)  In its corresponding opinion, the Bankruptcy Court discussed the findings of fact underlying its decision to void the Sale Order as it pertained to Pool Builders.  (Id., dkt. entry no. 849, 4-18-06 Op., at 2-11.)  Further, the Bankruptcy Court concluded, inter alia, that (1) under Article 2 of the Uniform Commercial Code ("UCC"), Polycel did not acquire title to Pool Builders's Molds through the bankruptcy sale because the Debtor did not have the power to transfer such title, (2) under the facts of this case, there is no reason to estop Pool Builders from claiming that it owns the molds, (3) no proof has been offered to contradict Pool Builders's assertion that it did not receive prior notice of the sale even though it "was entitled to notice of the sale and of the fact that the buying and selling parties contemplated Pool Builders' ownership interest in the

10

Molds would pass to the Buyer", (4) Section 363(m) of the
Bankruptcy Code is inapplicable because Pool Builders did not
appeal the Sale Order, but instead filed a Rule 60(b) motion for
relief from an order, and (5) the Debtor violated Pool Builders's
due process rights when it failed to notify it of the sale as
required by Section 363(b) of the Bankruptcy Code.  (Id. at 12,
13, 16-18, & 21.)  Thus, the Bankruptcy Court held, "the most
appropriate remedy is not to avoid the entire sale, but only
insofar as it pertained to the Molds of Pool Builders. . . .  By
voiding the title given to [Polycel] in the Sale Order, the
remedy restores title to Pool Builders and leaves possession with
Pool Builders, where it has been since June 2004."  (Id. at 22.)

**V.    Appeal to This Court**

Polycel filed a notice of appeal from the Bankruptcy Court's
April Order on April 20, 2006.  (Dkt. entry no. 1.)  Polycel
raises the following issues on appeal:

1.    Whether the Bankruptcy Court's Findings of Fact
      are clearly erroneous?

2.    Whether the Bankruptcy Court erred as a matter of
      law that [Polycel] did not acquire title to the
      Disputed Molds pursuant to the [Sale Order]?

3.    Whether Section 363(m) of the Bankruptcy Code
      prohibits the Bankruptcy Court from partially
      voiding the [Sale Order] and effectively rewriting
      the [APA]?

4.    Whether Rule 60(b)(4) of the Federal Rules of
      Bankruptcy Procedure [sic] authorizes the
      Bankruptcy Court to partially void the [Sale
      Order] and effectively rewrite the [APA]?

11

> 5.   Whether the Doctrine of Equitable Mootness bars the relief ordered by the Bankruptcy Court?

> 6.   Whether the Bankruptcy Court erred, as a matter of law, in ordering that Pool Builders be restored to possession in the Disputed Molds, thereby destroying [Polycel's] possessory interest in that property?

(Polycel Br. at 1-2.)

## DISCUSSION

### I.   Jurisdiction and Standard of Review

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's "legal determination de novo, its factual findings for clear error[,] and its exercise of discretion for an abuse thereof." In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000); see Fed.R.Bankr.P. 8013 ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.") Also, the Court, when addressing mixed questions of law and fact, divides the questions into their respective components and applies the appropriate standard to each. In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

## II.  Legal Standards[2]

### A.   Section 363

Section 363(b)(1) of the Bankruptcy Code permits a
bankruptcy trustee or a debtor-in-possession, after notice and a
hearing, to "use, sell, or lease, other than in the ordinary
course of business, property of the estate."  11 U.S.C. §
363(b)(1).  Federal Rule of Bankruptcy Procedure ("Bankruptcy
Rule") 8002 states that a notice of appeal from a bankruptcy
court order, including an order authorizing the sale of property
of the bankruptcy estate pursuant to Section 363(b)(1), must be
filed within ten days of entry of such order.  Fed.R.Bankr.P.
8002.  Further, Section 363(m) provides that the

> reversal or modification on appeal of an authorization
> under [Section 363(b)] of a sale or lease of property
> does not affect the validity of a sale or lease under
> such authorization to an entity that purchased or
> leased such property in good faith . . . unless such
> authorization and such sale or lease were stayed
> pending appeal.

11 U.S.C. § 363(m).  This is one of only two provisions in the
Bankruptcy Code that requires the stay of a bankruptcy court
order pending appeal.  Pitt. Food & Bev., Inc. v. Ranallo, 112
F.3d 645, 648 (3d Cir. 1997).  Accordingly, failure to obtain a

---

[2] The Debtor's bankruptcy case was commenced prior to the
effective date of the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005.  See 109 P.L. 8, 119 Stat. 23 (2005).
Section 363(b), which is discussed in this Legal Standards
section, was amended in that Act.

stay of a bankruptcy court's sale order renders any appeal of that sale order moot.[3]  Id. at 651.  Thus, Section 363(m) reflects a policy of affording finality to both bankruptcy courts' decisions and those orders and judgments that are relied upon by third parties.  In re Abbott Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986).

### B.    Rule 60(b)(4)

Bankruptcy Rule 9024 provides that Rule 60, which permits a party to seek relief from a judgment or order, applies in cases under the Bankruptcy Code, except in limited circumstances not applicable here.  Fed.R.Bankr.P. 9024.  Rule 60(b)(4) provides, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void." Fed.R.Civ.P. 60(b)(4).  Rule 60(b) generally expresses a limitation that "motions shall be made within a reasonable time."

---

[3] The doctrine of equitable mootness can also render an appeal of a bankruptcy court's sale order moot.  Under this doctrine, an appeal should be "dismissed as moot, even though effective relief could conceivably be fashioned, where implementation of that relief would be inequitable."  In re Genesis Health Ventures, Inc., No. 05-4005, 2006 U.S. App. LEXIS 24894, at *4 (3d Cir. Oct. 4, 2006) (quotation omitted).  In determining whether dismissal for equitable mootness is warranted, the Court must consider whether (1) the debtor's plan has been substantially consummated, (2) a stay has been obtained, (3) the relief requested would affect the rights of parties not before the court or the success of the plan, and (4) the public policy of affording finality to bankruptcy judgements will be harmed.  Id.

This limitation, however, does not apply to Rule 60(b)(4) and such motions may be made at any time.  See, e.g., United States v. One Toshiba Color T.V., 213 F.3d 147, 157 (3d Cir. 2000) (concluding that there is no time limit with respect to a challenge of a void judgment "because of its status as a nullity").  Also, a bankruptcy court's decision to grant or deny a Rule 60(b) motion may be reversed only for an abuse of discretion, except Rule 60(b)(4) determinations, which are subject to plenary review.  Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986).

"A void judgment is one which, from its inception, was a complete nullity and without legal effect."  Marshall v. Bd. of Ed., 575 F.2d 417, 422 n.19 (3d Cir. 1978).  A judgment is not void merely because it is erroneous or based upon precedent that is later deemed to be incorrect.  Id. at 422.  Instead, a judgment may be deemed void and subject to relief under Rule 60(b)(4), "if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered "a decree which is not within the powers granted to it by the law.'"  Id. (citations omitted).  Thus, the concept of a void judgment must be narrowly restricted and a judgment should only be deemed void when a court's action in issuing the judgment was a "clear usurpation of power."  See Page, 786 F.2d at 160.

A judgment may be void when the court "acted in a manner
inconsistent with due process of law." Official Comm. of
Unsecured Creditors v. U.S. Metalsource Corp. (In re U.S.
Metalsource Corp.), 163 B.R. 260, 267 (Bankr. W.D. Pa. 1993).
"Due process requires 'notice reasonably calculated, under all
the circumstances, to apprise interested parties of the pendency
of the action and afford them an opportunity to present their
objections.'" Folger Adam Sec., Inc. v. Dematteis/Macgregor, JV,
209 F.3d 252, 265 (3d Cir. 2000) (citation omitted).  The purpose
of notice under due process is to "apprise affected individuals
of, and permit adequate protection for, an impending hearing."
In re U.S. Metalsource Corp., 163 B.R. at 268.  Accordingly, a
lack of sufficient notice to an interested party may constitute a
due process violation and justify deeming a judgment void under
Rule 60(b)(4).[4]  See id. at 267-68 (analyzing whether unsecured
creditors committee's failure to be notified of hearing where
emergency wage order was entered was lack of procedural due
process rendering order void under Rule 60(b)(4), but finding no

_____

[4] Section 363(b)(1), as discussed supra, also requires
notice and a hearing before the sale of property of the estate.
11 U.S.C. § 363(b)(1).  Section 102(1) defines "after notice and
a hearing" as "such notice as is appropriate in the particular
circumstances, and such opportunity for a hearing as is
appropriate in the particular circumstances."  11 U.S.C. §
102(1)(A).  Further, Bankruptcy Rule 6004 provides that notice of
such a sale must be given in accordance with Rule 2002(a)(2),(c),
(i), and (k), which, among other things, directs the clerk to
give all parties in interest at least 20 days notice by mail.
Fed.R.Bankr.P. 6004(a) & 2002(a)(2).

violation because committee was notified of order immediately after entry, leaving committee time to appeal).

## III. Analysis

Polycel argues that the Bankruptcy Court abused its discretion by crafting an equitable remedy that is inconsistent with Rule 60(b)(4), "resulted in a partial avoidance of the Sale Order and has the legal effect of re-writing the [APA] to the detriment of [Polycel], a good faith purchaser and in contravention of section 363(m) of the Bankruptcy Code." (Polycel Br., at 24.)  Polycel contends that once the Bankruptcy Court determined that the Debtor's failure to properly notify Pool Builders of the sale made it constitutionally infirm, the Bankruptcy Court had only two options: (1) void the sale and return the parties to their status quo ante, or (2) let the sale stand because the parties irreversibly changed their positions. (Id. at 24 & 26.)  Polycel further contends that the Bankruptcy Court erred in fashioning its remedy because "the protections afforded a good faith purchaser under section 363(m) apply equally to all challenges to an order approving a consummate sale, which arguably would include a collateral attack of a sale order based on constitutionally defective process under Rule 60(b)(4)."  (Id. at 34-35.)  Polycel also argues that Pool Builders should be either equitably estopped from asserting title to the Molds because it made the Debtor's wrongful act possible,

17

or denied relief under Rule 60(b)(4) because, <u>inter alia</u>, it had actual knowledge of the Debtor's bankruptcy case but failed to keep itself apprised of the proceedings in that case.  (<u>Id.</u> at 39 & 44-49.)

Pool Builders, in contrast, argues that "the Bankruptcy Court correctly determined that Pool Builders was denied due process when the order confirming the sale of assets, and specifically including the Molds of Pool Builders, was entered without notice of such proposed order to Pool Builders."  (Pool Builders Br., at 9.)  Pool Builders concedes that it knew the Debtor was involved in a chapter 11 bankruptcy proceeding, but states that it had no notice of the sale and no reason to file a claim against the Debtor.  (<u>Id.</u> at 10.)  Thus, Pool Builders contends that the Bankruptcy Court appropriately avoided the sale only as it applied to Pool Builders.  (<u>Id.</u> at 17.)

Pool Builders asserts, in the alternative, that the Bankruptcy Court did not have jurisdiction to transfer the Molds because they did not become part of the bankruptcy estate.  (<u>Id.</u> at 18.)  Moreover, it argues that Section 363(m) does not apply here because that provision applies only to appeals from bankruptcy court orders and is normally invoked to establish the finality of sales of property of the bankruptcy estate, which the Molds were not.  (<u>Id.</u> at 21-22.)  It also argues that the Bankruptcy Court was correct in concluding that the doctrine of

equitable estoppel did not preclude it from voiding the Sale
Order as it pertains to it. (Id. at 36.)  Finally, Pool Builders
contends that even if the Bankruptcy Court inappropriately relied
on Rule 60(b)(4), this Court may still affirm the April Order
because (1) it "should be equitably relieved from the prospective
effect of the Sale Order pursuant to [Rule] 60(b)(5)", or (2)
relief from that order is justified under Rule 60(b)(6) due to
Polycel's failure to perform adequate due diligence prior to the
sale. (Id. at 29-34.)  Pool Builders notes that Polycel has a
contractual remedy against the Debtor pursuant to the APA, and
thus, the April Order does not leave it without any recourse.
(Id. at 38.)

     The Bankruptcy Court, after conducting an evidentiary
hearing on February 3, 2006, entered the April Order, which
transferred title to the Molds back to Pool Builders and voided
the Sale Order to the extent that it deprived Pool Builders of
such title. (Bankr. Case No. 00-62780, dkt. entry no. 850, April
Ord.)  Further, the Bankruptcy Court issued an opinion setting
forth the findings of fact underlying the April Order. (Id.,
dkt. entry no. 849, 4-18-06 Op., at 2-11.)  Although Polycel asks
this Court to consider whether these findings of fact are clearly
erroneous, it does not allege that any specific factual finding
was made in error or offer any evidence suggesting that the
Bankruptcy Court's findings were erroneous.  Moreover, the

19

Bankruptcy Court's findings of fact are supported by the record in this case.  Thus, this Court finds that the Bankruptcy Court's factual findings did not constitute clear error.  <u>See</u> <u>In re Rashid</u>, 210 F.3d at 205 (noting that district courts review bankruptcy court's factual findings for clear error).

The Bankruptcy Court, as discussed in more detail <u>supra</u>, concluded that (1) under Article II of the UCC, Polycel did not acquire title to Pool Builders's Molds through the bankruptcy sale, (2) there was no reason to estop Pool Builders from claiming that it owns the Molds, (3) Section 363(m) of the Bankruptcy Code is inapplicable here, and (4) the Debtor violated Pool Builders's due process rights.  (Bankr. Case No. 00-62780, dkt. entry no. 849, 4-18-06 Op., at 12, 13, 18, & 21.)  Polycel does not dispute the Bankruptcy Court's conclusion that under the UCC, title to the Molds would have remained with Pool Builders following the sale.  Further, this Court, based on the evidence in the record, agrees with the Bankruptcy Court's finding that Pool Builders did not in any way facilitate the Debtor's wrongful sale of the Molds, and thus, it should not be estopped from claiming ownership of the Molds.  (<u>See</u> <u>id.</u> at 13.)

This Court also concludes that the Bankruptcy Court did not err in voiding the Sale Order pursuant to Rule 60(b)(4) insofar as it affects Pool Builders's title to the Molds.  As previously discussed, a judgment may be void pursuant to Rule 60(b)(4) if it

20

does not comply with due process, which requires that interested parties receive reasonably calculated notice of a proceeding. See In re U.S. Metalsource Corp., 163 B.R. at 267; Folger Adam Sec., Inc., 209 F.3d at 265.  The Bankruptcy Court here considered the available evidence and thoroughly analyzed the due process requirements of both the Fifth Amendment to the United States Constitution and Section 363(b) of the Bankruptcy Code before concluding that Pool Builders, as an interested party, was entitled to prior notice of the sale.  (Bankr. Case No. 00-62780, dkt. entry no. 849, 4-18-06 Op., at 15-17.)  Therefore, this Court finds that the Bankruptcy Court did not err in ruling that the Sale Order violated Pool Builders's due process rights, or that the most appropriate remedy for addressing this violation was to avoid the entire sale pursuant to Rule 60(b)(4) insofar as it affected Pool Builders's Molds.  (See id. at 22.)

The Bankruptcy Court did not, as Polycel suggests, partially void or change the terms of Sale Order, but instead avoided the entire order as it pertains to the Molds.  The Bankruptcy Court essentially concluded that in transferring the Molds to Polycel, it acted "inconsistent with due process of law."  See In re U.S. Metalsource Corp., 163 B.R. at 267.  Moreover, the Bankruptcy Court's holding did not, in effect, rewrite the APA because that agreement specifically provides that the Debtor only sold and assigned to Polycel its "right, title and interest . . . in and

to certain tangible and intangible assets", including all molds located in its New Jersey premises, and the Debtor had only a possessory interest in Pool Builders's Molds that could be revoked at any time.  (See Polycel App., Item 10, APA, at ¶¶ 1.1.)  The Bankruptcy Court was simply unaware of the Debtor's true interest in the Molds at the time it entered the Sale Order, and thus, it failed to clarify the scope of the APA in that order in violation of Pool Builder's due process rights.  Further, this Court agrees with the Bankruptcy Court that Section 363(m) of the Bankruptcy Code does not preclude the remedy fashioned here because that provision pertains only to appeals from bankruptcy court orders, not Rule 60(b)(4) motions in which the movant claims a bankruptcy court order is invalid.  See 11 U.S.C. § 363(m).  Accordingly, this Court will affirm the April Order.[5]

_____

[5] Similarly, this Court notes that the doctrine of equitable mootness also would not preclude the Bankruptcy Court from voiding the Sale Order under Rule 60(b).  See In re Genesis Health Ventures, Inc., 2006 U.S. App. LEXIS 24894, at *4 (explaining that doctrine of equitable mootness permits dismissal of an appeal as moot "even though effective relief could conceivably be fashioned, where implementation of that relief would be inequitable").

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, concludes that Polycel has failed to demonstrate that the Bankruptcy Court erred in voiding the entire Sale Order insofar as it pertains to Pool Builders's Molds.  The Court will issue an appropriate order.


 s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

23